UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS GRAZIANO,

    Plaintiff,

v.     Case No.: 2:22-cv-34-SPC-KCD

JEFFREY S. SCHELLING, P.A.,

    Defendant.
    _____/

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 165) to which Plaintiff failed to timely respond. Rather than treat the motion as unopposed, the Court gave Plaintiff another chance. (Doc. 166, 169). Plaintiff has since responded (Doc. 167), and Defendant replied (Doc. 170). For the reasons below, the Court grants the motion in part.

This action began as a dispute over a defective HVAC system. Plaintiff determined that he could not repair his condominium's HVAC system without accessing his neighbor's condominium. But his neighbor would not allow him access. Meanwhile, his condo association demanded that he repair his HVAC and threatened to fine him if he did not comply. So Plaintiff sued his condo association and other defendants under various theories. Plaintiff settled all his claims except those brought against the condo association's law firm,

Defendant Jeffrey S. Schelling, P.A.[1] Defendant moves for summary judgment. (Doc. 165).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Before discussing the merits of summary judgment, the Court must clarify what claims remain. Plaintiff states that "[t]his case now involves three causes of action, the Federal Debt Collection Act [sic], Fraud, and Defamation." (Doc. 167 at 3). Not so. The second amended complaint does not mention fraud. It includes three claims against Defendant: Count I under the Fair Debt Collection Practices Act (FDCPA), Count II under the Florida Consumer Collection Practices Act (FCCPA), and Count VII for defamation. (Doc. 70). Plaintiff cannot add fraud now. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir.2004) (holding that a plaintiff cannot "raise new claims at the summary judgment stage").

---

[1] Defendant is a law firm, but the Court refers to Defendant as "he" rather than "it" for ease of reading.

Additionally, Plaintiff does not respond to Defendant's arguments for summary judgment on the FCCPA claim or even mention the FCCPA once in his briefing. So the Court deems the FCCPA claim abandoned. *See Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 855 (11th Cir. 2013) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citation omitted). With fraud and the FCCPA no longer at issue, the Court considers only the remaining defamation and FDCPA claims.

First, the defamation claim. Plaintiff relies on a single factual allegation supporting his defamation claim—that Defendant "published a defamatory statement to the prior owners, James and Denise Daley, stating that Graziano was delinquent in his assessment payments to EC Condo and EC Community." (Doc. 70 ¶ 90).

Under Florida law, defamation has five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defendant argues that he never spoke to the Daleys (no publication) and that Graziano was, in fact, delinquent (no falsity).

Plaintiff's own deposition supports Defendant's arguments. When asked about defamatory statements, Plaintiff answered:

3

> Q: Good. Tell me what was the shame-based statement that Mr. Schelling firm's [sic] made?
>
> A: I can't see any in this [second amended complaint]—
>
> Q: I'm not asking about this. I'm asking any, whether it's in there or not.
>
> A: No.
>
> Q: No what?
>
> A: No, he did not.
>
> Q: He did not make any; is that correct?
>
> A: Yes.
>
> Q: So Mr. Schelling made no shame-based statements is that right?
>
> A: Yes.
>
> Q: Okay. Did Mr. Schelling make a false statement?
>
> A: No.
>
> Q: . . . Did Mr. Schelling make a defamatory public comment that you're aware of?
>
> A: No.

Zeroing in on the specific factual allegations in the second-amended complaint, Plaintiff similarly testified that Defendant never defamed him:

> Q: Okay. So did Mr. Schelling make a statement to James Daley regarding your being delinquent?
>
> A: No, not that I know of, no.
>
> Q: Okay. Anybody ever tell you that he did, that you remember?
>
> A: From what my understanding is, that he called the Daleys' attorney.
>
> Q: Let's stick with what's here on the paper first. We'll get to the Daleys' attorney in a moment. He never contacted James Daley or Denise Daley and stated that you were delinquent, did he?
>
> A: No, he did not.

4

> Q: By the way, you were delinquent in your payments, weren't you, to the condo—
>
>     *   *   *
>
> A: Yes.

(Doc. 165-1 at 96-97, 100-101).

Faced with this damning testimony, Plaintiff acknowledges his defamation claim is "more prone to summary judgment[.]" (Doc. 167 at 11). But he tries to provide damage control—an affidavit from his attorney. The affidavit attempts to establish that Defendant told the Daleys' attorney about Plaintiff's delinquency:

> 28. Schelling stated to me that he had spoken with Bradley Donnely, the attorney for the prior owner of Graziano's unit during Graziano's rescission litigation against the his [sic] sellers of Unit 203.
>
> 29. Bradley Donnely spoke to me. I understood from that conversation that he had knowledge of Graziano's alleged delinquencies concerning Eagle Creek. See Exhibit POI at 3.

(Doc. 167-1 at 5). But this only invites the Court to speculate that Defendant may have discussed the delinquency with the Daleys' attorney. Crafty drafting does not provide Plaintiff with the facts he needs to raise a genuine dispute about publication and falsity. Given the record evidence, there is no genuine factual dispute whether Defendant made the allegedly defamatory statement to the Daleys or their attorney and that any such statement would have been true. Defendant is entitled to summary judgment on Count VII.

> **Commented [SC1]:** The double negative is awkward, can it be reworded to express the same thought?

5

Next, the FDCPA claim. Plaintiff alleged in his second-amended complaint that Defendant violated the FDCPA in three ways: (1) by "communicat[ing] purported debts by Graziano to third parties, including Daley while Daley and Graziano were engaged in discussions to rescind the Graziano condominium purchase agreement, and while Daley and Graziano were engaged in litigation"; (2) by "threaten[ing] to fine Graziano $5,000.000—in violation of Florida law—in order to induce Graziano to pay to replace his freon lines"; and (3) by seeking "collection of attorney's fees from Graziano in excess of the attorney's fees authorized by the Fee Agreement between Schelling Firm and either EC Condo or EC Community." (Doc. 70 ¶¶ 45-48).[2]

To succeed on his FDCPA claim, Plaintiff must show "(1) that the defendant is a debt collector, (2) that the challenged conduct related to debt collection, and (3) that the challenged conduct was prohibited under the

---

[2] In Plaintiff's response, he cites several new "peripheral" facts to support his FDCPA claim. For example, he claims Defendant took the position that Plaintiff must pay all outstanding collection fees before the association would discuss the HVAC repair. (Doc. 167 at 4). This is not in the second-amended complaint. The closest Plaintiff comes to making this claim is his allegation, under a subsection titled "*EC Condo Board Member Misconduct*," that "Defendant Owen demanded as a prerequisite to the meeting that Graziano first pay the attorneys' fees to Defendant Schelling which EC Condo owed him." (Doc. 70 ¶ 26). This allegation is not asserted against Defendant Schelling and is not one of the three specific bases cited under the FDCPA count. At this stage, Plaintiff "may not raise a new theory of liability based on unpleaded factual predicates in support of an already pleaded claim." *Ibeh v. Wilson*, No. 23-13128, 2024 WL 2723253, at *2 (11th Cir. May 28, 2024).

statute." *Morton v. Lien Filers, Etc. of Heath W. Williams, L.L.C.*, No. 22-12106, 2024 WL 1266186, at *4 (11th Cir. Mar. 26, 2024).

First, and for the reasons discussed above, Plaintiff's FDCPA claim cannot rely on the theory that Defendant discussed his delinquency with the Daleys or their attorney.

Second, threatening to fine Plaintiff $5,000 did not violate the FDCPA because that communication was unrelated to debt-collection activity. A communication "has the necessary nexus to debt collection under the FDCPA if it conveys information about a debt and its aim is at least in part to induce the debtor to pay." *Morton v. Lien Filers, Etc. of Heath W. Williams*, L.L.C., No. 22-12106, 2024 WL 1266186, at *4 (11th Cir. Mar. 26, 2024).

Defendant sent two warning letters to Plaintiff. The letters advised Plaintiff he must fix his HVAC unit or else "the Association pursuant to the Declaration may impose a fine of up to $5,000[.]" (Doc. 70-4 at 2, 4). The letters mentioned no debt nor tried to induce Plaintiff to pay. To be sure, a condo association fine or assessment, once levied, can be considered an FDCPA debt. *See Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951 (11th Cir. 2016) (holding a contractual obligation to pay HOA assessments creates a debt under the FCCPA). But the warning letters stated only that the association "may impose a fine." And, ultimately, the association did not fine Plaintiff. (Doc.

7

85-6 at 3). The threat of a future fine never levied and otherwise unrelated to any existing debt cannot support an FDCPA claim.

Plaintiff's third basis for his FDCPA claim—Defendant's efforts to collect attorney's fees—requires more discussion. Plaintiff claims that Defendant violated the FDCPA by attempting to collect attorney's fees over the amount authorized by Defendant's retainer agreement with the association. Defendant sent two debt-collection letters that each included a demand for $800 in attorney's fees for preparing the letters and sought over $28,000 in attorney's fees in the collection action in state court. (Docs. 70 ¶ 34, 35; 85-7; 85-9). Unlike the threatened fines discussed above, Defendant's demands for attorney's fees had the necessary nexus to debt-collection activity and were aimed to induce Plaintiff to pay condo association assessments.

Relevant here, the FDCPA prohibits the use of "unfair or unconscionable means" to collect a debt. This prohibition includes the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*." 15 U.S.C. § 1692f(1) (emphasis added). The FDCPA also prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." This prohibition includes the "false representation of . . . any services

8

rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2).

So Defendant's efforts to collect attorney's fees violate the FDCPA, as alleged, if he sought to collect fees not expressly authorized by the agreement creating the debt or permitted by law or falsely represented that he could lawfully receive the fees for the collection of Plaintiff's debt. Defendant argues that his collection efforts did not falsely represent that he could lawfully receive his attorney's fees and that they were authorized by his retainer agreement with the condo association.

Defendant's retainer agreement provides that he will receive a percentage of money collected from unit owners. It also provides that "[t]o send the initial demand letter [Defendant] will receive a flat fee of $100.00. To send the Second demand letter and prepare the Claim of Lien and record the Claim of Lien [Defendant] will receive a fee of $300.00[.]" (Doc. 85-8 at 1). The retainer agreement goes on to provide:

> In the alternative should you possess an agreement allowing for the costs of collection and attorneys fees, [Defendant] will keep track of time expended at the billing rate of $300.00 per hour. Should the Court award attorneys fees in a case, [Defendant] will receive the greater of the two methods of compensation for its activities, ie., either the applicable percentage or the award of fees, which ever is greater.

(Doc. 85-8 at 2). The retainer agreement was later amended to reflect Defendant's new rate of $400 per hour. (Doc. 85-8 at 5). So the agreement

9

authorizes Defendant to seek (1) flat fees of $100 and $300 for demand letters and (2) the greater of (a) a percentage of money collected or (b) court-awarded fees in any collection action.

Defendant's two debt-collection letters, each including a demand for $800 in attorney's fees for preparing the letters, clash with this framework. The retainer agreement allows Defendant to seek court-awarded fees at his hourly rate. But it does not allow him to seek these hourly fees directly from unit owners before litigation. The plain text of the retainer agreement allows Defendant to recover his hourly rate from Plaintiff only "should the Court award attorney's fees in a case." (Doc. 85-8 at 2). The retainer extension confirms this reading, providing that "the hourly rate for collection matters upon which the contingent fee will be calculated by the COURT will be $400.00 per hour for the year 2022." (Doc. 85-8 at 5) (capitalization in original). Otherwise, the retainer agreement states that Defendant is to charge a flat fee of $100 and $300 for demand letters like the ones here. (Doc. 85-8 at 1). Defendant is not entitled to summary judgment with respect to whether his demand letters violated the FDCPA.

Defendant is entitled to summary judgment, however, with respect to his request for fees during the collection action in state court. As discussed above, the retainer agreement expressly authorized Defendant to seek court-awarded attorney's fees at his hourly rate. This arrangement is consistent with Florida

law and the FDCPA. *See, e.g.*, *Newman v. Ormond*, 396 F. App'x 636, 640 (11th Cir. 2010). And Defendant did not violate the FDCPA by demanding a sum certain without the state court first determining the reasonableness of the fees sought. *Id.*

Finally, Defendant argues that Plaintiff has provided no evidence of damages. Plaintiff's argument focuses mainly on the defamation claim, which the Court has already sufficiently addressed. As for the FDCPA claim, the Court cannot grant summary judgment on damages. Plaintiff represents that he incurred attorney's fees defending Defendant's collection efforts. (*See, e.g.*, Doc. 165-1 at 171, 264-65). And statutory damages are available under the FDCPA and are ordinarily an issue submitted to a jury. *See* 15 U.S.C. § 1692k(b); *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 534 (11th Cir. 2017) (reversing a district court's sua sponte determination of statutory damages under the FDCPA).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 165) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** with respect to COUNT II under the FCCPA and COUNT VII for defamation. The motion is **DENIED** with respect to Plaintiff's claim that Defendant's two demand letters violated 15 U.S.C. §§ 1692e(2)


and 1692f(1) of the FDCPA, but is otherwise **GRANTED** with respect to COUNT I under the FDCPA.

2. This case is **REFERRED** to United States Magistrate Judge Nicholas P. Mizell for an August settlement conference. On or before **July 24, 2024**, the parties must contact Judge Mizell's courtroom deputy, Wendy Winkel, to coordinate availability for the conference.

3. To accommodate the settlement conference, the Court sua sponte extends the remaining case deadlines set forth in the Second Amended Case Management and Scheduling Order (Doc. 156) for 30 days and sets the case for a November 2024 trial.

**DONE** and **ORDERED** in Fort Myers, Florida on July 17, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record